UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CAMERON DAVON WRIGHT,

        Petitioner,

Case No. 1:23-cv-472

v.

Honorable Hala Y. Jarbou

JAMES SCHIEBNER,

        Respondent.
_____/

## **OPINION**

    Petitioner Cameron Davon Wright commenced this action with the assistance of counsel by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1), along with a motion to stay these proceedings and hold them in abeyance (ECF No. 2). In an opinion and order (ECF Nos. 6, 7) entered on May 30, 2023, the Court granted in part and denied in part Petitioner's motion to stay these proceedings and hold them in abeyance. The Court indicated that Petitioner would have until July 6, 2023, to either file in the state courts a motion for relief from judgment setting forth any unexhausted claims that he wished to pursue in his § 2254 petition, or file a motion to lift the stay to proceed on the § 2254 petition as filed. (ECF No. 7, PageID.33.) The Court noted further that if Petitioner elected to file a motion for relief from judgment, he must file a motion to amend his § 2254 petition to include any subsequently exhausted claims no later than 30 days after a final decision by the Michigan Supreme Court on the unexhausted claims. (*Id.*, PageID.33.) The Court administratively closed this action until Petitioner either filed a motion to amend or a motion to lift the stay. (*Id.*, PageID.34.)

On November 27, 2024, Petitioner returned to this Court and filed: (1) a motion to reopen the case (ECF No. 8); (2) a brief in support of his § 2254 petition (ECF No. 9); (3) a motion for an evidentiary hearing and expansion of the record (ECF No. 10); (4) a motion to compel discovery (ECF No. 11); a motion requesting that the Court not apply the concurrent sentence doctrine (ECF No. 12); and a motion to conduct a *Remmer* hearing (ECF No. 13). In an order (ECF No. 14) entered on December 10, 2024, the Court granted Petitioner's motion to reopen and lifted the stay previously imposed.

Petitioner's § 2254 petition is now before the Court for a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, under the concurrent sentencing doctrine, the Court will exercise its discretion and decline to consider the petition. The Court, therefore, will deny Petitioner's motion requesting that the Court not apply the concurrent sentence doctrine (ECF No. 12) and deny his other motions without prejudice.

I. **Factual Allegations**

Petitioner is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon Heights, Muskegon County, Michigan. Petitioner is serving sentences following his convictions for multiple offenses in four criminal proceedings in the Kent County Circuit Court: (1) the specific convictions under attack in this

action that were entered in *People v. Wright*, Case No. 18-01493-FC (Kent Cnty. Cir. Ct.) (the Davis murder); (2) the convictions that Petitioner attacked in a separate habeas corpus action, *Wright v. Schiebner*, 1:22-cv-392 (W.D. Mich.), that were entered in *People v. Wright*, Case No. 18-06740-FC (Kent Cnty. Cir. Ct.) (the Swift murder);[1] (3) a conviction entered in *People v. Wright*, Case No. 14-09000-FH (Kent. Cnty. Cir. Ct.) (the "fleeing" case); and (4) convictions entered in *People v. Wright*, Case No. 13-07991-FH (Kent Cnty. Cir. Ct.) (the drug case).

As a result of the various convictions, Petitioner is currently serving two concurrent consecutive sentence strings. The string related to the Davis murder commenced on February 28, 2019 (with credit for 460 days of time served). The string started with a 2-year sentence for a felony-firearm violation. When that sentence is complete—and it is now complete—Petitioner is required to serve concurrent sentences of life imprisonment without parole, for first-degree murder, and 6 to 10 years' imprisonment, for possession of a firearm by a felon and carrying a concealed weapon.

The other consecutive string begins with concurrent sentences from the drug case and the "fleeing" case. When those sentences are complete, Petitioner will begin serving the sentences for the Swift murder. The Swift sentences will commence with a 5-year sentence for felony-firearm. Upon completion of that sentence, Petitioner will serve concurrent sentences of life imprisonment without parole for first-degree murder and 50 to 100 years' imprisonment for possession of a firearm by a felon.

---

[1] This Court denied Petitioner's § 2254 petition challenging the Swift murder convictions on November 8, 2023. *See Wright v. Schiebner*, No. 1:22-cv-392, 2023 WL 7383257 (W.D. Mich. Nov. 8, 2023). The United States Court of Appeals for the Sixth Circuit denied Petitioner's application for a certificate of appealability on June 21, 2024. *See Wright v. Schiebner*, No. 23-2055, 2024 WL 4785773 (6th Cir. June 21, 2024). Petitioner has filed a petition for a writ of certiorari, which is still pending before the United States Supreme Court.

At issue in this case are the Davis murder convictions for first-degree murder, possession of a firearm by a felon, carrying a concealed weapon, and felony-firearm. Petitioner was sentenced for those offenses on February 28, 2019. He appealed his convictions. By opinion issued July 1, 2021, the Michigan Court of Appeals rejected Petitioner's challenges to his convictions and affirmed the trial court. *People v. Wright*, No. 348250, 2021 WL 2772864 (Mich. Ct. App. Jul. 1, 2021). Petitioner then sought leave to appeal to the Michigan Supreme Court. That Court denied leave by order entered March 8, 2022. *People v. Wright*, 970 N.W.2d 885 (Mich. 2022).

Petitioner filed his § 2254 petition, raising numerous grounds for relief challenging the Davis murder convictions, on May 8, 2023. (ECF No. 1.) Petitioner also filed a motion for the Court to hold his § 2254 petition in abeyance so that he could return to state court to file a motion for relief from judgment pursuant to Michigan Court Rule 6.500 so that he could exhaust further grounds for relief. (ECF No. 2.) As set forth above, in an opinion and order (ECF Nos. 6, 7) entered on May 30, 2023, the Court stayed and administratively closed this matter while Petitioner pursued relief under Rule 6.500. Notably, in its opinion, the Court advised Petitioner "that the presence of the two concurrent life-imprisonment strings implicates the 'concurrent sentencing doctrine.'" (ECF No. 6, PageID.26.n.1.)

After proceedings concluded on his Rule 6.500 motion, Petitioner returned to this Court with a motion to reopen, a brief setting forth all of his grounds for relief, a motion for an evidentiary hearing and expansion of the record, a motion to compel discovery, a motion for the Court to not apply the concurrent sentence doctrine, and a motion to conduct a *Remmer* hearing. (ECF Nos. 8, 9, 10, 11, 12, 13.) The Court reopened the case and lifted the stay in an order (ECF No. 14) entered on December 10, 2024.

## II.    Concurrent Sentencing Doctrine

The "concurrent sentencing doctrine" invests a court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction. *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The doctrine has its origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788–91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943). In these cases, the Supreme Court and the United States Court of Appeals for the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is not overturned. *Williams*, 714 F.2d at 555. "'[A]dverse collateral consequences' such as 'delay of

5

eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013). In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences. *Id*.

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge." *Buffin,* 513 F. App'x at 448; *see also Amaya v. United States*, 71 F.4th 487, 490–91 (6th Cir. 2023) (holding that consequences that might foreclose application of the doctrine on direct appeal may not suffice to prevent its application on collateral review). The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006). The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996). The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968). *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals. Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases. The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience. *Benton*, 395 U.S. at 791. The *Benton* Court simply chose not to apply it in that case. *Id*. at 792. *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause. Such slight or remote collateral consequences should not preclude application of the concurrent sentencing doctrine

6

when jurisdictional and double jeopardy considerations are not at issue. If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentencing doctrine. As noted above, Petitioner is currently serving two concurrent consecutive sentence strings—one string related to the Davis murder, involving life imprisonment without parole, and another string related to the drug and "fleeing" cases, as well as the Swift murder, which involves another life imprisonment without parole sentence. The present petition challenges only the convictions and sentences resulting from the Davis murder. This Court has already denied Petitioner federal habeas relief with respect to the convictions and sentences arising from the Swift murder. Even if the Court were to vacate the convictions and sentences arising from the Davis murder, Petitioner would still be serving life without parole for the Swift murder.

In his motion requesting that the Court not apply the concurrent sentencing doctrine, Petitioner raises the following three adverse consequences: (1) his unreviewed convictions (stemming from the Swift murder) have already been used as evidence in separate trials; (2) the unreviewed conviction "carries with it a 'stigma' that Petitioner is a bad [and/or] evil man"; and (3) "[i]n a future hypothetical event that Petitioner is granted a new trial on any case or is brought to trial on other circumstances or to be a witness, the unreviewed conviction could be used to impeach the Petitioner['s] character." (ECF No. 12, PageID.206–207.)

The Court concludes that Petitioner has not set forth the sort of collateral consequences that counsel against application of the doctrine. The stigma[2] associated with Petitioner's criminal

---

[2] In *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978), the Supreme Court noted that "the word ['stigma'] has no clearly defined constitutional meaning. It reflects a subjective judgment that is standardless." *Id*. at 294 n.34. In the due process context, stigma is generally considered to be "damage to reputation." *See, e.g., Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) ("Valmonte first must prove that her inclusion on the Central Register will result in stigma, that is,

7

history is not likely to be significantly reduced if Petitioner's convictions stemming from the Davis murder were vacated. Any criminal conviction creates some damage to the defendant's reputation and carries with it some level of disgrace. In light of Petitioner's many convictions, *see* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=715287 (last visited Dec. 12, 2024), it seems absurd to suggest that the marginal increase in reputational damage or disgrace that flows from the Davis murder on top of the Swift murder causes any significant prejudice.[3] *Harris v. Burt*, No. 18-1929 (6th Cir. Mar. 14, 2019) (affirming this Court's application of the doctrine to decline to conduct habeas review of one murder conviction with a life sentence where the petitioner was serving concurrent life sentences for other murder convictions).

For the same reason, it is difficult to discern how adding the Davis murder to the long list of Petitioner's other crimes is meaningfully more prejudicial than the list of crimes without the Davis murder. Whether the Davis murder is added to the list of Petitioner's crimes for impeachment purposes, for the legitimate purposes permitted under Michigan Rule of Evidence 404(b), or to enhance a subsequent sentence, the sheer number of Petitioner's other crimes renders the impact marginal, at best. Notably, even without the Davis murder conviction, Petitioner's next conviction will bring him to the peak of Michigan's habitual offender sentence enhancement

---

in 'public opprobrium' and damage to her reputation"); *Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 581 (6th Cir. 2004) (describing the "stigma" in the "stigma-plus" due process test as "damage to a reputation"). In that same context, the Supreme Court has likened a stigma to a "badge of disgrace." *Wisconsin v. Constantineau*, 400 U.S. 507, 509 (1971). Any of these descriptions is consistent with the Merriam Webster Dictionary definition of a "stigma" as a "mark of shame or discredit." Stigma, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/stigma (last visited Dec. 12, 2024).

[3] That is particularly true because the motive for the Swift murder was very clearly to stop Swift from testifying about the Davis murder. Even if the Davis murder conviction was to be set aside, the story of the Davis killing will always be part and parcel of the Swift murder.

structure. *See* MDOC OTIS, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber= 715287 (last visited Dec. 12, 2024).

If the concurrent sentencing doctrine retains any vitality—and the Supreme Court and the United States Court of Appeals for the Sixth Circuit have indicated that it does—this is a case where it is appropriately applied. Accordingly, the Court will exercise its discretion and decline to consider this habeas petition. Should Petitioner ever successfully challenge his convictions stemming from the Swift murder, particularly the murder conviction, the concurrent sentencing doctrine would no longer apply, and Petitioner could refile this petition.

In light of the foregoing, the Court will deny Petitioner's motion requesting that the Court not apply the concurrent sentencing doctrine (ECF No. 12) and will dismiss the instant petition without prejudice pursuant to that doctrine. Petitioner's remaining motions—his motion for an evidentiary hearing and expansion of the record (ECF No. 1), motion to compel discovery (ECF No. 11), and motion for a *Remmer* hearing (ECF No. 13) will be denied without prejudice to Petitioner's right to seek such relief should he be able to refile this petition in the future.

### III.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under

9

*Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

        The Court's dismissal of Petitioner's action pursuant to the concurrent sentence doctrine stands entirely separate from the merits of Petitioner's claims. The dismissal is more in the nature of a procedural dismissal. The dismissal, however, is entirely within the discretion of the Court under the doctrine. The Court finds that reasonable jurists could not conclude that this Court's determination that the concurrent sentencing doctrine is applicable here is debatable or wrong. Therefore, the Court will deny a certificate of appealability. Moreover, although the Court has not found that Petitioner is in custody in violation of the Constitution and has not found that Petitioner made a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter an order and judgment dismissing the petition, denying Petitioner's motion requesting that the Court not apply the concurrent sentencing doctrine (ECF No. 12), denying a certificate of appealability, and denying Petitioner's other motions (ECF Nos. 10, 11, 13) without prejudice.


Dated: _____    /s/ Hala Y. Jarbou
                                    Hala Y. Jarbou
                                    Chief United States District Judge